August J. **LIPPI**, Plaintiff,

v.

Lester **THOMAS** and the United Mine Workers of America, Defendants.

Civ. No. 68–336.

United States District Court
M. D. Pennsylvania.

March 31, 1969.

243

Hourigan, Kluger & Spohrer, Rosenn, Jenkins & Greenwald, Wilkes-Barre, Pa., for plaintiff.

Edward L. Carey, Washington, D. C., James T. Shea, Wilkes-Barre, Pa., for defendants.

OPINION

NEALON, District Judge.

Before the Court is a motion by defendant Union and defendant Acting President of District I of the United Mine Workers of America to dismiss, pursuant to Rule 12, F.R.Civ.P., the complaint filed by plaintiff, August J. Lippi. On August 5, 1968, plaintiff filed an action in this Court for a Declaratory Judgment pursuant to 28 U.S.C. § 2201. He seeks a judicial determination (1) that he is eligible to have his name placed upon the ballot for the Office of President of the Union, and if elected, to serve in that capacity, and (2) that the defendants be ordered to place plaintiff's name upon the ballot for the Office of Union President. Plaintiff alleged that the nominations for President of District I of the United Mine Workers Union would close on August 8, 1968. On or about August 3, 1968, defendant Union placed Dis-

trict I under a Trusteeship, which remains imposed at the present time and the effect of which has been to suspend the scheduled election. At the time of the filing of this complaint, plaintiff was still serving a prison term at the United States Penitentiary, Lewisburg, Pennsylvania, for a prior conviction in this Court of, inter alia, aiding and abetting in the willful misapplication of bank funds pursuant to 18 U.S.C. § 656, United States v. Daileda, 229 F.Supp. 148 (M.D.Pa. 1964), affirmed 342 F.2d 218 (3d Cir. 1965).

Three issues are presented by defendants' motion to dismiss: (1) whether plaintiff's exclusive remedy is before the Secretary of Labor under Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA); (2) whether the imposition of the Trusteeship by the International Union upon District I of the Union now makes this lawsuit moot under the Declaratory Judgment Act, and (3) whether plaintiff's conviction for aiding and abetting in the willful misapplication of bank funds precludes him from holding office pursuant to Section 504(a) of LMRDA.

## I EXHAUSTION OF ADMINISTRATIVE REMEDIES

At the outset, I must decide whether this case is properly before the Court at this time, or whether plaintiff's exclusive remedy is before the Secretary of Labor under Title IV of LMRDA, 29 U.S.C. §§ 481–483.[1] Defendants assert that the Supreme Court has declared that all questions concerning eligibility for Union office are subject to the provisions of Title IV of LMRDA. Defendants rely principally on Calhoun v. Harvey, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964).

In Calhoun, three Union members filed suit against their Union for an alleged violation of their right to nominate candidates in a Union election. The District Court dismissed for lack of jurisdiction and the Circuit Court reversed. In reversing the Circuit Court, Mr. Justice Black stated:

"Without setting out the lengthy legislative history which preceded the passage of this measure, it is sufficient to say that we are satisfied that the Act itself shows clearly by its structure and language that the disputes here, basically relating as they do to eligibility of candidates for office, fall squarely within Title IV of the Act and are to be resolved by the administrative and judicial procedures set out in that Title."

Plaintiff seeks a declaration of his rights under Section 504(a),[2] which is contained in Title V of the LMRDA. However, Section 504(a) is also incorporated by reference within Title IV of the Act. Section 401(e) of Title IV, 29 U.S.C. § 481(e), provides, in part:

"In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing

---

1. Title IV provides a remedy, declared by 29 U.S.C. § 483 to be "exclusive", authorizing members to seek post-election relief by (1) first exhausting all remedies available with the Union, (2) filing a complaint with the Secretary of Labor, who (3) may, after investigating the violation alleged in the complaint, bring suit in a United States District Court to attack the validity of the election. Calhoun v. Harvey, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964).

2. Section 504(a), 29 U.S.C. § 504(a), LMRDA, provides, in pertinent part:
 "No person who * * * has been convicted of, or served any part of a prison term resulting from his conviction of, robbery, bribery, extortion, embezzlement, grand larceny, burglary, arson, violation of narcotics laws, murder, rape, assault with intent to kill, assault which inflicts grievous bodily injury, or a violation of subchapter III or IV of this chapter, or conspiracy to commit any such crimes, shall serve—

 (1) as an officer * * * of any labor organization,
 * * * * *
 during * * * or for five years after such conviction or after the end of such imprisonment * * *."

shall be eligible to be a candidate and to hold office (subject to section 504 of this title * * *) * * * without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof."

Mr. Justice Stewart, concurring in Calhoun, supra, expressed concern that the majority opinion was construing Title IV to absolutely preclude pre-election litigation in the Federal Courts. Although a literal reading of Calhoun would seem to dictate a conclusion that all eligibility questions must be processed through Title IV proceedings, I do not believe that such a result was intended in situations similar to the case at bar. It is worth noting that Mr. Justice Black, in commenting on the applicability of Title IV to eligibility questions, pointed out that this was:

"* * * in harmony with the general congressional policy to allow unions great latitude in resolving their own internal controversies, and, where that fails, to utilize the agencies of Government most familiar with union problems to aid in bringing about a settlement through discussion before resort to the courts." 379 U.S. at 140, 85 S.Ct. at 296.

█ Eligibility, however, under Section 504(a) is not an internal policy of a Union which is subject to resolution or settlement by discussion before resort to the Courts, but is a matter requiring judicial interpretation of a specific Federal statute. Consequently, I conclude that this Court has jurisdiction under the LMRDA, the Declaratory Judgment Act and 28 U.S.C. § 1337 (although not specifically pleaded) to grant the relief sought. Serio v. Liss, 300 F.2d 386 (3d Cir. 1961); Berman v. Local 107, International Brotherhood of Teamsters, 237 F.Supp. 767 (E.D.Pa.1964).

## II MOOTNESS

█ Plaintiff filed his complaint on August 5, 1968. He alleged that nominations for President of District I of the United Mine Workers would close on August 9, 1968. On or about August 3, 1968, defendant Union placed District I under a Trusteeship. Since no election will take place as long as the Trusteeship is effective, defendants assert that the question of plaintiff's eligibility is now moot.

Recently, the Supreme Court had occasion to review the question of mootness in a declaratory judgment proceeding, Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113, March 4, 1969. The test there set forth was whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

In the Golden case, plaintiff sought a declaratory judgment respecting the constitutionality of a New York Penal Law, prohibiting the distribution of anonymous handbills during an election. Plaintiff was arrested for doing so during a 1964 Congressional contest. The Congressman in question had subsequently left the House of Representatives for appointment to the New York Supreme Court. The Court deemed this development relevant to the question of whether the prerequisites for the issuance of a declaratory judgment were present. On the facts presented, it concluded that no finding of "sufficient immediacy and reality" could be made since it was "most unlikely" that the former Congressman would again aspire for election to Congress. The Court made clear that the point at which this determination is to be made is at the time of the hearing, which, in the Zwickler case, was at the hearing on remand.

In my opinion, there is no substantial controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Although plaintiff must suffer certain "collateral consequences", Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20

L.Ed.2d 554 (1968), as a result of his conviction, this is not a case where plaintiff is attacking an outstanding judgment of conviction. Plaintiff's conviction, in fact, has been affirmed on appeal. This fact distinguishes Carafas v. LaVallee, supra; United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954), and Fiswick v. United States, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196 (1946), from the present circumstances.

The controlling fact here is that plaintiff is seeking a declaratory judgment of his eligibility rights in an election which was no longer a reality at the time he filed his lawsuit. It is true that an election will probably be held, if and when the Trusteeship is ever withdrawn, but this is hardly enough to establish "sufficient immediacy and reality." It would be an exercise in futility for me to now declare that plaintiff is eligible for an election which has been suspended as a result of a Trusteeship. The proper course, which plaintiff is indeed pursuing, is to attack the validity of the Trusteeship; see Civil Action No. 68–347, M.D. of Pa.; but this is of little aid in determining plaintiff's eligibility rights at the present time.

The only actions on the part of defendants which are alleged to be violative of plaintiff's rights under the LMRDA are (1) the writing of letters to various Union officers, (2) the sending of representatives and agents to various local Union meetings, and (3) the release of various announcements to newspapers. The message allegedly being disseminated by these methods is that " * * * Plaintiff is barred from being nominated and holding office as President * * * " of the Union by virtue of Section 504(a) of LMRDA. Without the existence of

an election, these allegations, even assuming their correctness, do not make out a situation of sufficient immediacy for a Federal Court to make declarations of rights between the parties. It is the election that gives these facts their immediacy. At the present time, not only is an election "most unlikely", but it is a nullity as long as the Trusteeship exists. Accordingly, I hold that no substantial controversy of sufficient immediacy and reality exists in this case to warrant the issuance of a declaratory judgment. For this reason alone, the plaintiff's complaint is subject to dismissal.

### III SECTION 504(a) of LMRDA

Assuming arguendo that the matter is indeed an actual controversy within the Declaratory Judgment Act, 28 U.S.C. § 2201, I am of the opinion that plaintiff's complaint still must be dismissed.

Plaintiff was convicted in this Court, inter alia, of aiding and abetting in the willful misapplication of bank funds pursuant to 18 U.S.C. § 656.[3] Section 656, broadly labeled as "Theft, embezzlement, or misapplication by bank officer or employee", penalizes one who " * * * embezzles, abstracts, purloins or willfully misapplies * * * " any bank funds. Simply stated, plaintiff argues that since he was not convicted of embezzlement, Section 504(a) of LMRDA is inapplicable to prevent him from being nominated for President of District I, UMWA.

Initially, it should be noted that this is a civil action and that the statute involved is a remedial one requiring a liberal interpretation. 51 C.J. S. Labor Relations § 110; International Brotherhood of Boilermakers etc. v. Braswell, 388 F.2d 193 (5th Cir. 1968).

3. Of course, an aider and abettor is treated as a principal under the provisions of Title 18 U.S.C. § 2:

"§ 2. Principals

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal. As amended Oct. 31, 1951, c. 655, § 17b, 65 Stat. 717."

Plaintiff's contention that the legislative history compels a narrow construction of Section 504 is without merit. All that plaintiff has shown in support of his position is that various bills covering this subject were introduced in both the House and the Senate and some contained broad language in identifying the crimes within the sweep of the proscription, e. g., "any other crime involving moral turpitude", but that the legislation finally adopted was confined to certain enumerated crimes. The mere fact that different language was employed in the numerous bills introduced is not significant as this is not unusual where important legislation is involved. This is particularly true of labor legislation which is peculiarly the product of legislative compromise of strongly held views. Local 1976, United Brotherhood of Carpenters and Joiners of America, AFL-CIO, v. National Labor Relations Board, 357 U.S. 93, 78 S.Ct. 1011, 2 L.Ed.2d 1186 (1958). While Congressional discussions and reports contained in the legislative history are often helpful, none have been cited in support of plaintiff's position. In the interpretation of statutes, it is the function of the Courts to construe the language so as to give effect to the intent of Congress. United States v. American Trucking Associations, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345. It must be applied in a manner to effectuate its purpose "in the light of the mischief to be corrected and the end to be attained." Warner v. Goltra, 293 U.S. 155, 55 S.Ct. 46, 79 L.Ed. 254. The actual purpose behind Section 504(a) was succinctly set forth by former Chief Judge Biggs in Serio v. Liss, supra, as follows:

> "We believe that Congress intended the provisions of Section 504(a) to have an antiseptic and purifying effect on the conduct of union affairs by union officials and officers and made clear that an individual with a criminal record should not be employed in a posi-

tion of union responsibility until he had reestablished his probity by a five year penitential period."

All of the reported cases have read Section 504(a) in a broad fashion so as to include crimes not specifically enumerated. In Postma v. International Brotherhood of Teamsters, 337 F.2d 609 (3d Cir. 1964), the Court concluded that the term "extortion" in Section 504(a) included within its meaning federal extortion laws as well as State extortion laws. In Berman v. Local 107, International Brotherhood of Teamsters, supra, it was held that the State crime of conspiring to cheat and defraud was included within the meaning of the term "larceny" as used in Section 504(a). In United States v. Priore, 236 F.Supp. 542 (E.D.N.Y.1964), the Court held that a State crime of conspiracy to commit extortion was included within the prohibition of Section 504(a), regardless of whether the State offense was a felony or a misdemeanor.

Mindful of these principles, we proceed to the precise issue before the Court, viz., whether, under Section 504(a), the plaintiff is disqualified from serving as an officer of the Union because of his conviction for willful misapplication of bank funds in violation of Title 18 U.S.C. § 656. It is my conclusion that the term "larceny"[4] as used in Section 504(a) includes within its meaning a conviction for misapplication of bank funds.

As used in Federal statutes, larceny is a broad term. Judge Higginbotham examined its usage in Berman v. Local 107, International Brotherhood of Teamsters, Inc., supra, and concluded:

> " * * * Congress has designated as crimes acts which were within the former common law classification of larceny, and in those instances, Congress has acted without using the nomenclature of 'larceny' in the definition of the offense and without designating

---

4. The fact that the statute used the phrase "Grand Larceny" does not distinguish it from the commonly accepted term "Lar-

ceny." See Berman v. Local 107, supra, 237 F.Supp. at p. 770, n. 4.

the legislation as a larceny statute. In addition, Congress has designated gradations of offenses which, though substantially similar, are distinguishable from the classic common law contours of larceny; yet for both classes of offenses—the precise common law offense and the offense similar but distinguishable from the common law offense—the Federal Courts have referred indiscriminately to the applicable legislation as 'larceny statutes.' "

In the Berman case, the section in question was Section 641 of the United States Criminal Code, 18 U.S.C.A. § 641, which reads, in part: "Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another * * *." The case at hand involved Section 656 of the United States Criminal Code, 18 U.S. C.A. § 656, which provides: "Whoever * * * embezzles, abstracts, purloins or willfully misapplies * * *."[5]

 Willful misapplication is a misapplication knowingly and designedly made, by the officer charged, for his own use and benefit or for the use and benefit of some person or company other than the association whose funds are taken. 9 C.J.S. Banks and Banking § 645 (b). To constitute a willful misapplication, a conversion must occur. United States v. Britton, 107 U.S. 655, 2 S.Ct. 512, 27 L.Ed. 520 (1882); United States v. Heinze, 218 U.S. 532, 31 S.Ct. 98, 54 L.Ed. 1139 (1910). Thus understood, Section 656 is virtually identical to Section 641. I hold, therefore, that just as Section 641 is a larceny statute, so, too, is Section 656, under which plaintiff was convicted, and thus, plaintiff is barred under Section 504(a) of LMRDA from holding Union office.

I am further persuaded to arrive at this result from a consideration of Section 501(c) of LMRDA, 29 U.S.C. § 501 (c), which is similar to Sections 641 and 656 of the United States Criminal Code, but which relates to the funds of labor unions. Under plaintiff's theory, logical-

ly extended, one convicted of abstraction of Union funds under Section 501(c) would not be barred by the strictures of Section 504(a) since the crime of "abstraction" is not enumerated therein. Such a strained result could not have been within the contemplation of Congress when it approved Section 504(a), especially in view of the broad findings made at the time of passage. 29 U.S.C. § 401.

Another example showing the weakness of plaintiff's reasoning was described in Berman, supra, in the following manner:

"Would a government employee who had been indicted and convicted, pursuant to § 641, for stealing thousands of dollars be subject to the prohibitions of § 504 in the Labor-Management. Reporting and Disclosure Act? Plaintiff's answer necessarily would be 'No' because the employee who had stolen the funds had not been indicted by a statute which was titled 'Larceny' or which used the term larceny. Yet, the courts have held that § 641 is actually a statute defining 'larceny of government property.' O'Malley v. United States, Id., 227 F.2d [332] at 336. I cannot assume that Congress was unaware of the fact that numerous statutes such as § 641 have been held by the courts to be larceny statutes, and accordingly, I must conclude that Congress intended to cover a criminal offense, such as plaintiff's ' * * * by whatever name it may be called.' Crabb v. Zerbst, Id., 99 F.2d [562] at 564."

 Finally, I find that Section 504 (a) was intended by Congress to apply to non-Union conduct, as well as Union conduct. Otherwise, Congress would not have included within its prohibition such crimes as rape, narcotics violations and arson. As a result, the fact that plaintiff was convicted of a crime not involving the Union is of no moment.

5. While plaintiff confined his argument to the crime of embezzlement, Section 656

is not so limited and also includes theft and misapplication within its purview.

Accordingly, I conclude that when Congress enacted Section 504(a), it was intended that the crime of willful misapplication of bank funds, 18 U.S.C. § 656, while not specifically enumerated in the statute, was one of the criminal offenses properly includible within the term "Grand Larceny." To hold that Congress intended to exclude thefts, conversions, abstractions and willful misapplications from the ambit of the proscription would be to ignore "the mischief to be corrected."

## IV CONCLUSION

For all of the foregoing reasons, I hold (1) that this Court has jurisdiction under LMRDA, the Declaratory Judgment Act and 28 U.S.C. § 1337, to grant the relief sought; (2) that no actual controversy exists within the meaning of the Declaratory Judgment Act, and (3) that assuming, arguendo, that an actual controversy does exist, plaintiff's conviction for misapplication of bank funds is for all intents and purposes a conviction within the meaning of "grand larceny" in Section 504(a) of LMRDA, thus barring him from holding Union office at the present time. Accordingly, defendants' motion to dismiss the complaint will be granted.