**UNITED STATES of America, Plaintiffs,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al., Defendants.**

**In the Matter of the CAREY SLATE PROTEST.**

**No. 88 CIV. 4486(DNE).**

United States District Court, S.D. New York.

June 22, 1998.

Martha Walfoort, James & Hoffman, P.C., Washington, DC, for defendant.

## OPINION AND ORDER

EDELSTEIN, District Judge:

This matter is an appeal from the Election Appeal Master's decision dated May 15, 1998, 98 Elec.App. 349 (KC) ("EAM Decision"), affirming in all respects the Election Officer's decision dated April 27, 1998, PR–035–EOH (Post–47–EOH) ("EO Decision").

### Background

The EO Decision arose out of a protest filed by the slate of Ron Carey ("Carey") on May 16, 1997, and supplemented on May 30, 1997. The protest alleged that James P. Hoffa ("Hoffa") and members of his slate failed to make mandatory disclosures on Campaign Contributions and Expenditure Reports ("CCERs") required under the Election Rules, and that they accepted substantial prohibited union and employer contributions, in violation of the Election Rules. EAM Decision at 2–3. The protest was initially denied by the former Election Officer, Barbara Zack Quindel, on August 21, 1997. *Id.* at 2. However, that decision was reversed and remanded by the Election Appeals Master's decision dated November 17, 1997, in which he ordered the Election Officer to "thoroughly and convincingly" investigate the protest. *In re Carey Slate Protest,* 97–Elec.–App. 322 (KC) (Nov. 17, 1997) at 7.

On April 27, 1998, the Election Officer, Michael G. Cherkasky, issued a lengthy decision, granting the protest in part and denying it in part. The Election Officer's decision was the culmination of an extensive five-month investigation into the allegations of wrongdoing by Hoffa and his campaign. The investigation uncovered violations of the Election Rules requiring candidates to disclose and identify financial supporters and expenditures. However, the Election Officer was unable to determine the source of all unitemized contributions to Hoffa and his Slate. Nevertheless, except for services which the Election Officer found to have been improperly donated to the Hoffa Campaign by Richard Leebove ("Leebove") and his public relations company, RL Communications, Inc. ("RL"), the Election Officer found no evidence that there were "anything but minimal contributions from prohibited sources" among the aggregate total of $3.6 million raised by Hoffa's campaign. EO Decision at 17, 109, 115.

Therefore, despite the violations found against Hoffa and others, the Election Officer determined that disqualification from running in the rerun election was not warranted in this case because the primary violations of the Election Rules related to the failure to disclose otherwise proper campaign contributions. EO Decision at 112, 116. However, the Election Officer did impose certain remedial measures against the Hoffa Campaign and others. See EO Decision at 117–120.

The Election Officer's decision was appealed to the Election Appeals Master by various members of the Carey Slate as well as Leebove and RL. EAM Decision at 6–7. The members of the Carey Slate primarily argued that "the remedies imposed by the Election Officer were insufficient to cure" the violations of the Election Rules. They argued that Hoffa should be disqualified from the rerun election and/or the contribution received from Leebove and RL Communications should be fully disgorged and applied to

the costs of the rerun election. *Id.* Leebove and RL challenged the adverse findings and remedies imposed against them. *Id.* Hoffa did not appeal the factual findings or the remedy imposed against him by the Election Officer.

The Election Appeals Master, after reviewing the Election Officer's decision and the appeals submitted by the various parties, affirmed the Election Officer's decision in all respects, finding that the Election Officer's decision and remedies were neither arbitrary nor capricious. EAM Decision at 9, 18. Leebove and RL as well as IBT member William Carothers ("Carothers") and International vice-president Ken Mee ("Mee") filed timely appeals with this Court.[1]

### Election Officer's Findings

As the Election Appeals Master noted in affirming the Election Officer's decision, "[t]hree principal determinations lie at the center of this appeal." EAM Decision at 4. First, the Election Officer found that Leebove, and RL, both considered employers under the Election Rules, improperly contributed $167,675 in services to the Hoffa Campaign by grossly underbilling the time spent working for the campaign. EO Decision at 86–88. Second, the Election Officer found that at least 194 individual contributions of more than $100 each, totaling over $43,868, were not individually disclosed on Hoffa's CCERs, and were instead reported in the unitemized category. In particular, the Election Officer determined that Hoffa intentionally concealed a $1,000 contribution from former IBT General President William McCarthy ("McCarthy"), and that Hoffa did not testify honestly about the decision not to disclose the McCarthy contribution. EO Decision at 30–32. Third, the Election Officer concluded that compensation for work performed for the campaign of Tom O'Donnell, candidate for regional vice president on the

Hoffa Slate, and the Hoffa Campaign by Kevin Currie ("Currie"), a convicted Class E felon, was not reported on the CCERs as required. EO Decision at 60–62. Although Currie's employment was not itself a violation of the Election Rules, the Election Officer determined that payments were made to Currie's wife rather than to Currie, and were reported as such, so that the records would not reflect that a felon was on Hoffa's paid campaign staff. EO Decision at 61.

Nonetheless, the Election Officer determined that "[t]he violations found in the Carey Slate Protest investigation [did] not warrant candidate disqualification." *Id.* at 114. The Election Officer noted that the "hallmarks" (personal knowledge, intentional misconduct, and abuse of official authority) of the disqualification remedy imposed against Carey were not present in this case. *Id.* at 114–15. He found that Hoffa's "failure to disclose certain contributions of more than $100 did not hide prohibited contributions from the IBT electorate," and that "Hoffa's intentional concealment of an otherwise proper $1,000 contribution" was "*de minimis* in the scale of $3.6 million in total contributions." *Id.* at 115. The Election Officer noted that the reporting violations would be remedied, and that "any adverse consequences would be ameliorated in advance of the rerun election" by requiring that the Hoffa Slate Campaigns make full disclosure of the source of these contributions and by imposing remedial fines. *Id.*

As for the improper contribution from Leebove and RL to the Hoffa Campaign, the Election Officer found that while this was "a very serious violation," it did not warrant disqualification of Hoffa. *Id.* He determined that "Leebove's activity was not secret during the campaign," and that the "evidence [did] not show Mr. Hoffa's personal knowl-

---

1. In its submission to this Court, the Hoffa Slate argued that the appeal filed by Carothers and Mee was untimely. Parties to an appeal before the Election Appeals Master may seek review by this Court within fourteen days of the issuance of the Election Appeals Master's decision. *United States v. IBT*, 921 F.Supp. 1076, 1077 (S.D.N.Y. 1996). While the Hoffa Slate is correct that the Election Appeals Master's decision is dated Friday, May 15, 1998, it was not filed with this

Court until Monday, May 18, 1998. Therefore, all appeals filed on or before Monday, June 1, 1998 were timely.

In addition, the Hoffa Slate argued that the Government's submission was also untimely. However, the Government requested, and this Court granted, an extension of time for response papers from June 11, 1998 at 5:00 p.m. to June 12, 1998 at 10:00 a.m.

edge and participation in a scheme set up with the intent to support his campaign with a significant amount [of] money from an employer." *Id.* at 115–16.

Although the Election Officer did not disqualify Hoffa from running in the rerun election, he did impose certain remedial measures intended "to ensure a 'fair, honest, open and informed election[ ].'" EO Decision at 110 (quoting Art. XVI, Sec. 2(f)(1) of the Rules for the 1995–1996 IBT International Union Delegate and Officer Election) (the "Election Rules"). In order to cure the violation involving Leebove and RL, the Election Officer (i) levied a fine of $16,767 against the Hoffa Slate (10% of the improper contribution received from Leebove and RL), (ii) barred any candidate, slate or independent committee from contracting with Leebove or RL, or paying them for any services, goods, or work of any kind for the duration of the 1996 election; (iii) barred Leebove and RL from performing any work for or against any candidate or from billing or receiving monies from or incurring debt for IBT election related work for the duration of the 1996 election; and (iv) ordered a notice to be posted in the *Teamster* magazine to inform the membership of the improper contribution. EO Decision at 33, 88–89.

In fashioning a remedy for the 194 individual contributions totaling $43,668.80 that were not individually disclosed on Hoffa's CCERs, including the intentionally concealed $1,000 contribution from McCarthy, the Election Officer imposed a fine of $1,000 against the Hoffa Campaign for the McCarthy donation, and fined Hoffa an additional $4,286, an amount equal to 10% of the remaining improperly reported contributions. EO Decision at 32. In addition, the Election Officer ordered a notice relating to the non-disclosures to be published in the *Teamster* magazine. EO Decision at 32–33.

Finally, in order to cure the violation involving the non-disclosure of Currie's services, the Election Officer levied a fine of $12,684.75 against the O'Donnell Campaign and $7,500 against the Hoffa Campaign, a total amount equal to the falsely reported salary. EO Decision at 62.

## Discussion

 The Election Officer has broad discretion in fixing an appropriate remedy for violations of the Election Rules. *United States v. IBT ("Montante")*, 1996 WL 315825, **5–6 (S.D.N.Y. June 7, 1996). The findings, determinations, and remedies of the Election Appeals Master and the Election Officer are "entitled to great deference." *United States v. IBT ("Carey Disqualification")*, 988 F.Supp. 759, 766 (S.D.N.Y.1997), *appeal docketed*, Dkt. No. 98–6014 (2d Cir. Jan. 14, 1998). The decisions of the Election Appeals Master and the Election Officer are reviewed under the "same standard of review applicable to review of final federal agency action under the Administrative Procedures Act," and will not be disturbed unless, on the basis of all the evidence, they are "arbitrary and capricious." *Id.*

 In reviewing a remedy imposed by the Election Officer and affirmed by the Election Appeals Master, this court should only consider whether the Election Officer "made 'an allowable judgment in [his or her] choice of the remedy,'" *United States v. IBT ("Wilson, Weber & Dickens")*, 978 F.2d 68, 73 (2d Cir.1992) (quoting *Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 189, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973)), and should not overturn the choice of sanctions "unless it finds the penalty 'unwarranted in law' or 'without justification in fact.'" *Id.* at 73 (quoting *Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 185–86, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973)). However, it is this Court's responsibility to determine whether the Election Officer, in exercising his authority, has applied the correct standards. See *United States v. IBT ("Rerun Decision")*, 983 F.Supp. 488, 491–92 (S.D.N.Y.1997) (reviewing Election Officer's decision to apply standard applicable to supervised elections).

### 1. *Disqualification*

 In the past, the Election Officer has considered numerous factors in determining whether to disqualify a candidate. For example, in one case, candidates were disqualified for soliciting, collecting and marking ballots, repeatedly disregarding directives of the Election Officer, and interfering with the

Election Officer's investigation. *Moerler*, Post 73–LU63–CLA (June 17, 1991), *aff'd* 91 Elec.App. 167 (June 22, 1991) (SA), *aff'd, United States v. IBT ("Moerler"),* 777 F.Supp. 1127 (S.D.N.Y.). In another case, a candidate was disqualified for forging the name of another proposed slate member on a slate declaration form. *Shanahan*, P–397–LU317–PGH, *aff'd*, 96 Elec.App. 91 (KC), *aff'd sub nom., United States v. IBT ("Montante"),* 1996 WL 315825 (S.D.N.Y. June 7, 1996). Most recently, the Election Officer disqualified Carey for knowingly participating in a scheme to misuse $735,000 in union funds in violation of the Election Rules and his fiduciary duty to the union membership. *In re: Cheatem (Carey Disqualification),* Post–27–EOH (KC), *aff'd, Carey Disqualification,* 988 F.Supp. at 767–69. Although the factors previously considered by the Election Officer may provide guidance to the Election Officer when fashioning a remedy, they are not controlling.[2]

■ Appellants Carothers and Mee argue that the Election Officer erred by failing to disqualify Hoffa, and thus the Election Appeals Master's decision affirming the Election Officer's decision should be reversed. They argue that the Election Officer's failure to disqualify Hoffa based on the findings of fact that the Election Officer made was not "an allowable judgment" on the choice of the appropriate remedy, because it was "contrary to the Consent Decree." Brief in Support of Appeal by William Carothers and Ken Mee at 19. Carothers and Mee state that the Election Officer found that Hoffa made fraudulent misrepresentations on the CCERs, that he acted intentionally to conceal information, that he testified falsely, and that he accepted improper employer contributions and then failed to disclose them. *Id.* at 19–22. They argue that the Consent Decree was intended to eliminate this type of misconduct, and that "[s]ome offenses *compel*

disqualification." Reply Brief in Support of Appeal by William Carothers and Ken Mee From Decision of the Election Appeals Master at 3 (emphasis in original).

Whether the factors cited by Carothers and Mee might support a decision by the Election Officer to disqualify a candidate, is not the issue before this Court. The Election Officer enjoys broad discretion in determining the appropriate remedy for violations of the Election Rules. The standard applied by this Court in considering the Election Officer's imposition of the remedy of disqualification is whether disqualification is both "proportionate to the misconduct at issue ... and appropriate for ameliorating the harm" caused by the misconduct. *Montante*, 1996 WL 315825, *6; *accord Carey Disqualification*, 988 F.Supp. at 766, 770. Here, the Election Officer, exercising his broad discretion, decided not to disqualify Hoffa from the rerun election. Therefore, the issue before this Court is whether that decision was unwarranted in law or without justification in fact.

As noted in previous decisions of this Court, the Election Officer "is best equipped to evaluate the demeanor, credibility, and ultimately, the culpability of those who appear before him." *Montante*, 1996 WL 315825, *5. Therefore, the remedies imposed by the Election Officer are entitled to "great deference." *Id.* The Election Officer explained that this case did not involve a massive broad-based conspiracy, a major federal felony, an abuse of official position, participation by Hoffa in a scheme, or large scale improper contributions of which Hoffa was found to have detailed personal knowledge. EO Decision at 116. He found that Hoffa's misconduct did not involve a diversion of funds in violation of a fiduciary duty and that Hoffa did not otherwise "willfully flout" the Election Rules. EO Decision at

---

**2.** The Election Officer's broad discretion extends to the remedy of disqualification. Disqualification remains available as an effective remedy to address conduct that is inconsistent with or inimical to the purposes of the Consent Decree, even if other remedies might conceivably remove the impact of the misconduct. While certain factors may bear on the severity of a candidate's misconduct, there are no specific prerequisites that must be met before the Election Officer may impose the remedy of disqualification. The only requirement the Election Officer must meet in selecting the remedy of disqualification is that it is both "proportionate to the misconduct at issue ... and appropriate for ameliorating the harm that [the] misconduct caused." *United States v. IBT ("Montante"),* 1996 WL 315825, *6 (S.D.N.Y. June 7, 1996).

116. Furthermore, the Election Officer determined that the concealment of the $1,000 McCarthy contribution was "*de minimis*" in comparison to the $3.6 million in total contributions received by the Hoffa Campaign, and that the underlying contribution was legal. Finally, the Election Officer concluded that the violations found could be cured without resort to disqualification. EO Decision at 115.

Hoffa's violations, in particular his intentional concealment of the McCarthy contribution, his failure to individually disclose on the CCERs an additional $42,868.80 in contributions, and his intentional concealment of his employment of Currie as a full-time campaign staff employee, are worrisome and suspect. Hoffa's actions were a deliberate attempt to mislead IBT members as to the source of his financial support, and his employment of a felon on his campaign staff. The mere fact that the dollar amount of the McCarthy check was relatively small in comparison to the total amount of donations received by the Hoffa Campaign does not make Hoffa's actions less reprehensible. Similarly, the fact that Hoffa's employment of a felon was not in itself illegal, does not in any way minimize his intent to deceive. The intent to conceal information from the IBT electorate is not a *de minimis* violation.

 However, the Election Officer's primary role is not to punish election misconduct, but to protect the election process from the effect of misconduct. His foremost concern in fashioning an appropriate remedy is to select a course of action that will ensure that the rerun election is fair and honest. The Election Officer decided that the imposition of remedial fines against Hoffa and others would be "sufficient to uphold the objectives of the Consent Decree."[3] *Id.* at 111.

While the violations of the Election Rules by Hoffa are disturbing and reflect poorly upon him, this Court finds that the Election Officer's decision to allow Hoffa to run in the rerun election, and the Election Appeals Master's affirmance of that decision were within their broad discretion and were not unwarranted in law or without justification in fact.

### 2. The Election Officer's Conclusions Regarding Leebove & RL

As previously noted, the Election Officer found that Leebove and RL made an improper employer contribution to the Hoffa Campaign by grossly underbilling for their services. EO Decision at 79, 86. The Election Officer determined that a conservative estimate of the improper contribution received by the Hoffa Campaign amounted to $167,675. *Id.* at 88. In addition to other remedies,[4] the Election Officer barred Leebove and RL from performing any work for or against any candidate or billing, receiving money, or incurring debt for election-related work for the duration of the 1996 election.

Leebove and RL make four arguments on appeal. First, they argue that the Election Officer did not adequately demonstrate that Leebove was actively involved in the Hoffa Campaign. Memorandum in Support of Appeal of RL Communications, Inc. and Richard Leebove ("RL Br.") at 3–8. Second, they attack the Election Officer's methodology in reaching his conclusion regarding the actual amount of work performed by Leebove and RL. RL Br. at 8–15. Third, Leebove and RL assert that the Election Appeals Master erred in not allowing RL and Leebove access to the evidence relied upon by the Election Officer and in not performing an *in camera* review of the materials. RL

---

3. The fines imposed by the Election Officer for the failure to properly disclose over $43,000 in contributions are modest at best. Modest fines for such conduct act as an incentive for unscrupulous people to mislead the IBT electorate. A fine amounting to 10% of the improperly disclosed contributions is hardly remedial. Although this Court is uncomfortable with the Election Officer's decision to impose such modest fines, it cannot find that it rises to the level of an abuse of discretion.

4. The other remedies include (1) a fine of $16,767 against the Hoffa Campaign; (2) a bar against any candidate, slate or independent committee contracting with Leebove or RL, or paying them for any service, goods or work for the duration of the 1996 election; and (3) an order requiring that a notice be posted in the *Teamster* magazine to inform the membership of the improper contribution. The Hoffa Campaign did not appeal any of these remedies.

Br. at 17–19. Finally, Leebove and RL argue that they are not parties to the Consent Decree and that therefore they are entitled to additional process. RL Br. at 21–23.

 None of the arguments presented by Leebove and RL have merit. The Election Officer found that Leebove "participated in virtually every activity of the national campaign," EO Decision at 66, and that Leebove and RL "grossly underestimated or deliberately concealed the time spent working for the Hoffa Campaign." Id. at 86. He estimated that Leebove and RL actually worked on Hoffa's campaign "at least five times more than [Leebove's] 'hourly' bills reflect." EO Decision at 87. In making this determination, the Election Officer relied on the testimony of dozens of witnesses, audits of RL and the Hoffa Campaign, and the review of telephone records and newspaper accounts. EO Decision at 66–89.

For the purpose of brevity, this Court will consider Leebove's and RL's first two arguments together. Leebove and RL argue that the Election Officer provided no explanation for his conclusion that they actually worked on Hoffa's campaign five times as much as they claimed. RL Br. at 9. Their attempt to attack the Election Officer's methodology in reaching his conclusion regarding the amount of work performed by RL and Leebove is unavailing.

The factual findings, credibility determinations and selection of remedies of the Election Officer are entitled to great deference and will not be overturned unless they are arbitrary and capricious on the basis of all the evidence. See, Carey Disqualification, 988 F.Supp. at 766. The Election Officer was faced with a daunting task in trying to determine the activities of Leebove and RL. Inexplicably, there was a complete absence of timesheets, logs, calendars, diaries, expense reports or any contemporaneous writings at RL for the Election Officer to review. Furthermore, the Election Officer was unable to rely on Leebove's recollections in the absence of any documentary evidence, given that the Election Officer found Leebove's testimony "evasive, incredible and false." EO Decision at 68. Therefore, the Election Officer had to rely on a myriad of sources to determine the amount of time Leebove and RL spent working for the Hoffa Campaign. See EO Decision at 66–81.

The Election Officer compiled sufficient evidence to establish Leebove's "constant activity" on behalf of the Hoffa Campaign. Id. at 69. Moreover, there is ample evidence to support his estimation that Leebove and RL actually worked for the Hoffa Campaign five times as much as they claimed. See Transcript of May 11, 1998 Hearing before the Election Appeals Master ("Tr.") at 87–88. Therefore, this Court finds that the Election Officer's determinations regarding Leebove's and RL's work for the Hoffa Campaign were neither arbitrary nor capricious.

 Third, Leebove's and RL's claim that the Election Appeals Master erred in not allowing them access to the evidence relied upon by the Election Officer and in not performing an in camera review of the materials is also without merit. Leebove and RL cite no authority for their claim that they are entitled to such process. Moreover, there is nothing in the 1996 Election Rules that requires that evidence be provided to Leebove and RL or that the Election Appeals Master must undertake an in camera review.

 Finally, Leebove's and RL's claim that because they are not parties to the Consent Decree they are entitled to additional process is without merit. RL Br. at 21–23. Rule 65(d) of the Federal Rules of Civil Procedure provides that an injunction is binding "upon the parties to the action, their officers, agents, servants, employees and attorneys." See Backo v. Local 281, United Bhd. of Carpenters & Joiners of Am., 438 F.2d 176, 180 (2d Cir.1970). Leebove and RL acted on behalf of IBT member Hoffa and thus they are bound under Rule 65(d) by the provisions of the Consent Decree. Moreover, even assuming, that they were not agents under Rule 65(d), the process afforded them was "agreeable to the usages and principles of law." See United States v. IBT (Yellow Freight), 948 F.2d 98, 104–05 (2d Cir.1991), vacated with directions to dismiss as moot, 506 U.S. 802, 113 S.Ct. 31, 121 L.Ed.2d 4 (1992).

### 3. Disgorgement of Improper Contribution from Leebove & RL

As noted above, the Election Officer found that Leebove and RL made an improper employer contribution to the Hoffa Campaign by grossly underbilling for their services. EO Decision at 79, 86. The Election Officer concluded that the improper contribution, calculated conservatively, amounted to $167,675. *Id.* at 88. To remedy this violation, the Election Officer ordered the Hoffa Campaign to pay a fine of $16,767 to the Election Officer, a sum representing 10% of the improper contribution. *Id.* at 118.

The Election Rules unequivocally provide that "[c]andidates are strictly liable to insure that each contribution received is permitted under the Rules. Prohibited contributions must be returned promptly." Election Rules, Art. XII, Sec. 1(b)(9). The purpose of this rule is to insure that the remedy imposed will remove the prohibited contribution from the election process. In accordance with this rule, the Election Officer has consistently required the return or disgorgement of improper campaign contributions. See, e.g., Rerun Decision, Post–27–EOH (August 21, 1997); at 118 n. 86 (citing cases), 123; *Thompson,* P–1025–LU745–SOU (November 1, 1996), *aff'd,* 96 Elec.App. 268 (November 12, 1996); *Giacumbo,* P–001–IBT–PNJ (September 29, 1995), *aff'd in relevant part,* 95 Elec.App. 32 (November 1, 1995) (KC).

In determining the amount to be paid by the Hoffa Campaign, the Election Officer concluded that a large fine would be inappropriate because "[t]he Election Officer could not find evidence that traced union funds [were] being used to support Mr. Leebove's under-compensated work for the Hoffa Campaign or evidence of the campaign's direct complicity in arranging alternative funding to support Mr. Leebove." *Id.* at 89. In addition, the Election Officer determined that the remedy imposed should not benefit the wrongdoers, Leebove and RL. *Id.* Therefore, he decided not to order full payment for the donated services, and instead ordered a largely "symbolic" fine (10% of the improper contribution) be paid to the Election Officer. See Tr. at 83.

While this Court agrees with the Election Officer that Leebove and RL should not benefit from their wrongdoing, there is no appropriate basis for departing from the rule governing the return of prohibited contributions. The Hoffa Campaign benefitted from the full amount of the improper contribution because it did not have to pay for the true value of the services performed. A "symbolic" fine of only 10% of the prohibited contribution does not accomplish the goal of encouraging future vigilance against receipt of improper contributions. In fact, because such a fine effectively allows the Hoffa Campaign to retain 90% of the value of the improper contribution, it creates an incentive for campaigns to accept improper contributions.

The Hoffa Slate argues that the Election Officer's decision not to require full disgorgement of the improper contribution was within his discretion and was not arbitrary and capricious. Reply of the Hoffa Slate to the United States Attorney's Letter Re: Appeal of William Carothers and Ken Mee ("Hoffa Reply") at 3–4. They point to this Court's decision in *United States v. IBT ("Carey Disqualification"),* 988 F.Supp. 759 (S.D.N.Y.1997), where this Court concluded, over objections of the Hoffa Slate, that "the Election Officer acted well within his discretion not to order repayment of the improper contributions." Carey Disqualification at 769.

The Election Officer's decision not to order repayment of the improper contributions received by the Carey Slate is clearly distinguishable from this case. As this Court noted in the Carey Disqualification decision:

> this Court charged Election Officer Conboy solely with the duty of investigating and deciding the question of disqualification of Carey. Furthermore, in her decision of August 21, 1997, ordering a rerun election, Election Officer Quindel concluded that, other than the issue of disqualification of Carey and other slate members, the Election Officer 'will not consider any additional evidence or further protest relating to the conduct of the initial election.'

*Id.* (quoting *In re: Jeraldine Cheatem et al.,* Post–27–EOH (BZQ) (Aug. 21, 1997) at 129).

Moreover, Election Officer Quindel stated that the "investigation of the initial election is considered closed," and the outstanding matters are left to other forums including the IRB and the Government to pursue. *Id.* Therefore, this Court concluded that "[g]iven Election Officer Conboy's narrowly defined duties, the fact that the initial election was considered closed," and that the United States Attorney's Office had already taken steps to force the disgorgement of the bulk of the improper contributions to the Carey Slate, "the Election Officer acted well within his discretion not to order repayment of the improper contributions." *Id.*

Here, the Election Officer's role was not narrowly defined. The Election Appeals Master ordered the Election Officer to "thoroughly and convincingly" investigate the Carey Slate Protest as a pre-election protest. This Court finds that the Election Officer's decision to order only a "symbolic" fine was inexplicably contrary to the Election Rules' mandate that prohibited contributions be returned promptly. See Election Rules, Art. XII, Sec. 1(b)(9). In order to ensure a fair and honest election and to encourage future vigilance against improper contributions, the Hoffa Campaign must be held accountable for the entire improper contribution. Therefore, in addition to the fines already imposed by the Election Officer, the Hoffa Campaign is ordered to pay a fine of $150,908 (an amount representing the remaining 90% of the improper contribution) to the Election Officer. The sum is ordered to be remitted to the Election Officer within thirty (30) days of this decision.

The Election Appeals Master's May 15, 1998 decision affirming the Election Officer's April 27, 1998 decision is hereby affirmed in part and modified in accordance with this Opinion.

SO ORDERED.