**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al., Defendants,**

**James P. Hoffa, Appellant.**

**Docket No. 98–6186**

United States Court of Appeals,
Second Circuit.

Argued Oct. 28, 1998.

Decided Feb. 23, 1999.

See also: 159 F.3d 757.

Patrick J. Szymanski, Baptiste & Wilder, P.C., Washington, D.C. (Franklin K. Moss, Eric R. Greene, Spivak, Lipton, Watanabe, Spivak & Moss, New York, N.Y., On the Brief), for Appellants.

Beth E. Goldman, Assistant United States Attorney, New York, N.Y. (Mary Jo White, United States Attorney for the Southern District of New York, New York, N.Y., Gideon A. Schor, Assistant United States Attorney, Of Counsel), for Plaintiff–Appellee.

Before: VAN GRAAFEILAND and LEVAL, Circuit Judges, and BURNS, District Judge.*

PER CURIAM:

Appellant James P. Hoffa appeals from a June 22, 1998 order of the United States District Court for the Southern District of New York (David N. Edelstein, *J.*), *United States v. International Bhd. of Teamsters* ("*Hoffa Violations*"), 9 F.Supp.2d 354 (S.D.N.Y.1998). The district court required the Hoffa Campaign to disgorge the full value of a contribution that it improperly received during Hoffa's 1996 run for the office of General President of the International Brotherhood of Teamsters ("IBT" or "Teamsters"). The district court's ruling reversed the decision of Election Appeals Master Kenneth Conboy, which had affirmed the decision of Election Officer Michael G. Cherkasky, to require the Hoffa Campaign to disgorge only ten percent of the value of the

---

* The Honorable Ellen B. Burns, Senior District Judge for the District of Connecticut, sitting by designation.

improper contribution. We agree with the district court that the rules governing the 1996 election require disgorgement of the full value of the improper contribution. We therefore affirm.

## BACKGROUND

This case is the most recent in a long series of disputes arising from the Consent Decree entered in *United States v. International Bhd. of Teamsters*, 88 Civ. 4486 (S.D.N.Y. Mar. 14, 1989). The Consent Decree provides for an Election Officer who is authorized, at the government's option, to "supervise" the 1996 election. This power of supervision has been interpreted broadly to encompass the power to promulgate election rules and procedures, *see United States v. International Bhd. of Teamsters* ("*1991 Election Rules Order*"), 931 F.2d 177, 187 (2d Cir.1991), and to impose remedies for electoral misconduct, *see, e.g., United States v. International Bhd. of Teamsters* ("*Sansone*"), 981 F.2d 1362, 1371–72 (2d Cir.1992). Following the 1991 Teamsters election, the government opted to supervise the 1996 election, and the Election Officer promulgated the Rules for the 1995–1996 IBT International Union Delegate and Officer Election ("Election Rules" or "Rules"). The district court and this court approved those rules. *See United States v. International Bhd. of Teamsters* ("*1996 Rules*"), 896 F.Supp. 1349 (S.D.N.Y.1995), *aff'd as modified*, 86 F.3d 271 (2d Cir.1996).

Article XII of the Election Rules strictly regulates campaign finances. Contributions and expenditures greater than $100 must be itemized. Contributions from employers are prohibited: "No employer may contribute, or shall be permitted to contribute, anything of value, where the purpose, object or foreseeable effect of the contribution is to influence, positively or negatively, the election of a candidate. No candidate may accept or use any such contribution." Further, "[c]andidates are strictly liable to insure that each contribution received is permitted under the *Rules*. Prohibited contributions must be returned promptly."

After the initial 1996 election, the Election Officer ordered a rerun election because the Officer found that Ron Carey, the incumbent General President and the apparent winner of the 1996 election, had committed major violations of the rules governing contributions. *See United States v. Int'l Bhd. of Teamsters* ("*Carey Disqualification*"), 156 F.3d 354, 357 (2d Cir.1998). After additional investigation solely focused on whether Carey should be disqualified from standing for office in the rerun election, the Election Officer ordered that Carey be so disqualified. *See id.* at 358.

The present dispute stems from a protest filed with the Election Officer by Carey supporters on May 16, 1997, alleging that Hoffa violated the Rules in the 1996 campaign. After an extensive review, the Election Officer issued his ruling on April 27, 1998. He found violations in three categories, and specified remedies short of disqualification. The first two types of violations, which are not in dispute here, involved apparently legal activities that the Hoffa campaign simply failed to disclose: the campaign's acceptance of numerous contributions larger than $100, and its wage payments to a convicted felon who served as a staff member. As remedies, the Election Officer required, among other things, that the Hoffa campaign pay fines to the Election Officer equaling ten percent of the unreported contributions and the entire disguised salary.

The third violation was the receipt of an illegal contribution. The Election Officer found that Richard Leebove and his firm, RL Communications, Inc. ("RL"), provided the Hoffa campaign with public relations services valued at no less than $185,325, but that the campaign paid Leebove and RL only $17,650. As Leebove also was an employer, his net contribution of $167,675 violated the Rules.

As a remedy, the Election Officer barred Leebove and RL from participating in IBT's rerun election, and imposed a fine on the Hoffa campaign equal to ten percent of the improper contribution, or $16,767. Explaining the fine, the Election Officer stated that

"[i]t would be inappropriate to order payment for the donated services, as that would simply reward Mr. Leebove's misconduct, and the campaign's improper acceptance of the contribution." The Election Officer also said he "could not find evidence that traced union funds being used to support Mr. Leebove's undercompensated work for the Hoffa Campaign or evidence of the campaign's direct complicity in arranging alternative funding to support Mr. Leebove." The decision of the Election Officer did not refer to the rules establishing strict liability for illegal contributions or requiring that such contributions be "returned."

On appeal from the Election Officer's judgment, the Election Appeals Master on May 18, 1998 affirmed the Election Officer's decision. On June 1, two supporters of Carey appealed the decision not to disqualify Hoffa. On June 12, after obtaining a one-day extension, the government submitted that, rather than merely paying a fine equal to 10 percent of the illegal contribution, Hoffa should be required to disgorge the illegal contribution in full.

In its decision of June 22, 1998, the district court modified the ruling of the Election Appeals Master, by ordering the Hoffa campaign to pay a fine equal to the value of Leebove and RL's improper contribution, less the fine that the campaign had already paid. *See Hoffa Violations,* 9 F.Supp.2d at 363. Judge Edelstein noted that under the Consent Decree, he could not disturb remedies imposed by the Election Officer unless they were "unwarranted in law or without justification in fact." *Id.* at 358 (quoting *United States v. International Bhd. of Teamsters ("Wilson, Weber & Dickens"),* 978 F.2d 68, 73 (2d Cir.1992)). Applying that standard, the court found that the Election Officer's remedy was unsustainable in view of the strict requirements of the Election Rules, which "insure that the remedy imposed will remove the prohibited contribution from the election process." *Id.* at 362. In the view of the district court, the Election Officer's remedy impermissibly "allow[ed] the Hoffa Cam-

paign to retain 90% of the value of the improper contribution." *Id.* A fine equal to the full illegal contribution therefore was required.

Hoffa timely appealed the district court's judgment.[1]

## DISCUSSION

Although the Consent Decree states that the district court shall review decisions of the Election Officer under the deferential standard identified in the district court's opinion, the Decree does not specify the standard of review appropriate for this court in reviewing those decisions of the district court. In past appeals from such decisions, we have found that we need not determine a precise standard of review, because the district court's decision could be affirmed under "any arguably applicable standard of review." *Carey Disqualification,* 156 F.3d at 364; *see also United States v. International Bhd. of Teamsters ("DiGirlamo"),* 19 F.3d 816, 820 (2d Cir.1994) (same). We again find that the district court's decision should be affirmed under any reasonable standard of review.

Hoffa first argues that the government's appeal was untimely because it was not filed within fourteen days of the Election Appeals Master's decision. It is true that a 1996 district court order did give "parties to an appeal" fourteen days to appeal an order of the Election Appeals Master. *United States v. International Bhd. of Teamsters,* 921 F.Supp. 1076, 1077 (S.D.N.Y.1996). That same order also specified, however, that "the Government ... may file papers with this Court in response to such appeal within ten calendar days of service of the appeal," and further that the district court retains "discretion ... to set a different briefing schedule." *Id.* After the two Carey supporters filed their appeal seeking disqualification on June 1, the government had until June 11 to respond, and the district court acted well within its discretion in giving the government one extra day. Furthermore, because the government is a party to the underlying consent decree with a unique interest in its enforcement, the

---

1. Carey supporters also appealed the district court's decision not to disqualify Hoffa. By separate opinion issued on October 29, 1998, we

affirmed that decision of the district court. *See United States v. International Bhd. of Teamsters,* 159 F.3d 757 (2d Cir.1998).

government may raise issues on appeal even though the parties have declined to raise them. Accordingly, the government's challenge to the Election Appeals Master's decision was timely.

■ Hoffa also argues that the Election Officer acted within his discretion in declining to fine the Hoffa campaign the full value of Leebove and RL's illegal contribution. We disagree. While ten percent fines were permissible for Hoffa's apparently legal but improperly unreported contributions, they were not permissible for the prohibited contribution from Leebove and RL Communications. The rules holding candidates "strictly liable" to prevent illegal contributions and requiring the "return[ ]" of such contributions unmistakably require that candidates not retain prohibited contributions. Further, the Election Officer's legitimate concern about improperly rewarding Leebove by repaying him was fully addressed by levying a fine payable to the Election Officer. The fine did not need to be less than 100% to prevent Leebove from benefiting. Finally, the sources of Leebove's support during his period of prohibited work are irrelevant; because Leebove was an employer, his contribution was prohibited whatever his funding sources. As the Rules prescribe full disgorgement of prohibited contributions, we agree with the district court that a 100% fine was required.

Hoffa finally asserts that the district court's decision is inconsistent with an earlier district court ruling upholding the Election Officer's decision not to require Carey to disgorge the full value of contributions he improperly received. *See United States v. International Bhd. of Teamsters,* 988 F.Supp. 759, 769 (*"Carey Disqualification"*) (S.D.N.Y.1997). We disagree. At the time of the Carey decision, the Election Officer had "narrowly defined duties," *id.* at 769, which were limited to "deciding the issue of disqualification of [Carey]," *id.* at 762–63. In Hoffa's case, the Election Officer's duties and remedies were not so restricted. Unlike Carey's case, the Election Officer in this instance had no basis to depart from the clear direction of the Election Rules that the candidates not keep prohibited contributions.

## CONCLUSION

The judgment of the district court is affirmed.