UNITED STATES of America,
Plaintiffs,

v.

INTERNATIONAL BROTHERHOOD
OF TEAMSTERS, et al.,
Defendants.

No. 88 CIV. 4486(DNE).

United States District Court,
S.D. New York.

March 19, 1999.

Martha Walfoort, James & Hoffman, P.C., Washington, DC, for defendants.

*OPINION & ORDER*

EDELSTEIN, District Judge.

*BACKGROUND*

This opinion emanates from the voluntary settlement of an action commenced by

the United States of America against, *inter alia*, the International Brotherhood of Teamsters ("IBT" or "the union") and the IBT's General Executive Board ("GEB"). The settlement is embodied in the voluntary consent order entered March 14, 1989 ("Consent Decree"). The goals of the Consent Decree are to rid the IBT of the hideous influence of organized crime and establish a culture of democracy within the union. The long history of this case has been set forth in this Court's numerous prior opinions. Accordingly, only those facts necessary for resolving the instant appeal shall be set forth.

The 1996 IBT International Union Delegate and Officer Rerun Election ("Rerun Election") took place during the closing months of 1998. On December 7, 1998, the Election Officer, pursuant to Article III, § 5 of the Rules for the Rerun Election (the "Rerun Election Rules"), announced the results of the vote count for the offices of General President, General Secretary Treasurer, International Trustee, Eastern Regional Vice President, and Canada Regional Vice President. Then, on December 9, 1998, the Election Officer announced the results of the vote count for the offices of Vice President At–Large, Southern Regional Vice President, and Western Regional Vice President. On January 28, 1999, with two exceptions,[1] the Election Officer certified the results of the Rerun Election, subject to the parties' right to appeal to the Election Appeals Master. *See* Decision of the Election Officer in Election Office Case Nos. PR–409–JC18–NYC; PR–418–EO–EOH; Post–71–EOH; and Post–72–EOH(PR–388–EO–EOH) (January 28, 1999) ("EO Decision"). On Appeal, the Election Appeals Master affirmed in part and modified in part the EO Decision. *See* Decision of the Election

Appeals Master 98 Elec.App. 424 (KC) (February 23, 1999) ("EAM Decision").

The matter currently before this Court is an appeal from the EAM Decision. In that decision, the Election Appeals Master upheld the Election Officer's determination that certain allegations and charges regarding members of the Hoffa Slate pending before the Independent Review Board ("IRB") did not justify a delay in the certification of the results of the IBT Rerun Election. The Election Appeals Master also agreed with the Election Officer's decision to disqualify J.D. Potter ("Potter") from holding office as Southern Region Vice President. The Election Appeals Master, however, concluded that the Election Officer erred in determining that the newly elected GEB could fill Potter's Regional Vice President position by appointment. Instead, the Election Appeals Master ordered that a rerun election for that position be held. The Election Appeals Master stayed his decision pending appeal to this Court.

On appeal, filed March 1, 1999, the Leedham Slate and the Hoffa Slate raise two issues. First, the Leedham Slate asserts that the Election Officer's and the Election Appeals Master's conclusion that the pendency of allegations and charges before the IRB did not warrant a delay in the certification of the results of the Rerun Election was incorrect. Thus, the Leedham Slate requests that this Court "remand these proceedings to the Election Officer with directions to refuse to certify the election pending the outcome of the IRB's charges against candidates O'Donnell, Santangelo, and DeSanti, and its report of its investigation of Mr. Hoffa." Brief in Supp. of Appeal of Tom Leedham and the Tom Leedham Rank and File Power Slate ("Leedham Br.") at 28. Second, the Hoffa Slate argues that the Elec-

---

1. The Election Officer did not certify the result of the Teamsters Canada Vice Presidential contest. According to the Election Officer, an investigation is ongoing concerning Rerun Election Rules violations that, if substantiated, may affect the outcome of that

election only. EO Decision at 3. The Election Officer also refused to certify the results of J.D. Potter's ("Potter") election for Southern Region Vice President. *Id.* The circumstances surrounding Potter's disqualification are discussed later in this Court's Opinion.

tion Officer's decision to allow the GEB to fill the vacant office of Southern Region Vice President by appointment was within the Election Officer's discretion, and thus, the Election Appeals Master was wrong to order that a rerun election be held to fill the position. Appeal of James P. Hoffa and Hoffa Unity Slate from Election Appeals Master's Decision in 99–Elec.App. 424 (KC) ("Hoffa Br.") at 2–5.

## Discussion

### A. Standard of Review

■■ The decisions of the Election Officer and the Election Appeals Master are reviewed under the "same standard of review applicable to review of final federal agency action under the Administrative Procedures Act," and will not be overturned unless that decision is "arbitrary and capricious." *United States v. IBT ("Carey Disqualification")*, 988 F.Supp. 759, 766 (S.D.N.Y.1997), *aff'd*, 156 F.3d 354, 364 (2d Cir.1998). Further, where the issue of review is simply the propriety of the remedy that the Election Officer imposed and that the Election Appeals Master affirmed, the scope of review is narrow. *See id.* (stating that the factual findings, credibility determinations and selection of remedies of the Election Officer and the Election Appeals Master are "entitled to great deference"). In reviewing the imposed remedy, the Court may only consider whether the court-appointed officer "made an allowable judgment in his or her choice of remedy." *Carey Disqualification*, 156 F.3d at 366 (quoting *United States v. IBT ("Wilson, Weber & Dickens")*, 978 F.2d 68, 73 (2d Cir.1992)). Nonetheless, "it is this Court's responsibility to determine whether the Election Officer [and the Election Appeals Master] in exercising [their] authority, [have] applied the correct standards." *United States v. IBT ("Carey Slate Protest")*, 9 F.Supp.2d 354, 358 (S.D.N.Y.), *aff'd*, 159 F.3d 757 (2d Cir.1998).

### B. Certification

■ In determining whether pending IRB charges and allegations warranted a delay in certification, the Election Officer and Election Appeals Master considered whether the misconduct at issue implicated the fairness and integrity of the IBT Rerun Election. The Election Officer reasoned that "[t]he IRB charges cited by the protestors would only justify delay or withholding of certification ... if the conduct involved, evaluated under the [Election Rules], was a violation that may have affected the outcome of the election in the sense that it abridged the IBT rank-and-file membership's right to a free, fair and honest election." EO Decision at 33–34; *see also* EAM Decision at 8, 10. Both the Election Officer and the Election Appeals Master concluded that the charges and allegations against certain members of the Hoffa Slate that the Leedham Slate cited (excluding those involving Potter) did not affect the integrity of the election process. EO Decision at 34–58, EAM Decision at 8. Therefore, they determined that certification was appropriate.

The Leedham Slate contends that the Election Officer and the Election Appeals Master abused their discretion by applying the incorrect legal standard to determine whether to delay certification. Leedham Br. at 7–13. According to the Leedham Slate, the Election Officer and the Election Appeals Master erred because they "eschewed any obligation under the Consent Decree other than their obligation to ensure a fair and open election," by only concerning themselves with the integrity of the IBT Rerun Election. Leedham Br. at 8–10. The Leedham Slate argues that the Election Officer must not only ensure a fair election, but also, prior to certification, screen the character of candidates to preclude candidates who have a propensity to abuse power. *Id.* at 9, 7 ("The Election Officer must look to the character of the candidate, as well as to whether the candidate's misconduct irremediably tainted the election process.").

As the Government points out, the Leedham Slate's argument is "based on a misunderstanding of the role of the Election Officer and the Consent Decree's electoral provisions." Letter from Assistant United States Attorney Karen Konigsberg to Honorable David N. Edelstein (March 12, 1999) ("Government Br.") at 3. In *United States v. IBT ("Cheatem")*, this Court noted that the election process administered by the Election Officer is fundamentally distinct and independent from the disciplinary procedures administered by the IRB. 988 F.Supp. 759, 765 (S.D.N.Y. 1997). Here, the Election Officer correctly noted that

> [w]here a particular set of facts gives rise to a violation that is within the jurisdiction of both the IRB and the Election Officer, the Election Officer must make his own determination of a remedy that serves the objectives of the election supervision. The Election Officer, however, may impose remedies only if they are consistent with his supervisory mandate.

EO Decision at 32.

The Election Officer's function under the Consent Decree is to ensure a fair, honest and open election process, not to sit in judgment of a candidate's character or fitness for office based upon alleged misconduct that he determined did not affect the integrity of the election. The Consent Decree's disciplinary process is the appropriate avenue for sanctioning or removing officers who engage in such misconduct.

In support of its argument, the Leedham Slate suggests that the Election Officer's decisions to disqualify Ron Carey ("Carey") and Potter were justified "not in terms of the impact of the misconduct on the election, but on the overriding goal of the Consent Decree to remove from positions of union power officers—and candidates for office—having a proven propensity for the abuse of such power." Leedham Br. at 9. Contrary to the Leedham Slate's assertion, and as this Court and the Second Circuit noted, the Election Officer's

decision to disqualify Carey was a "strictly remedial" measure designed to protect the fairness of the rerun election by preserving the deterrent effect of the Election Rules, and intended to level the playing field in the Rerun Election by eliminating the substantial benefit that the misconduct afforded Carey. *Carey Disqualification,* 156 F.3d at 362, 366; *Carey Disqualification,* 988 F.Supp. at 768. Similarly, the Election Officer's decision to disqualify Potter was made based on his determination that Potter's "conduct [was] egregious and [could not] be condoned under the Consent Decree's requirements for a democratic election that is fair and honest." EO Decision at 51.

■ In addition, the Leedham Slate is also incorrect in arguing that the Election Officer's and the Election Appeals Master's failure to delay certification is inconsistent with the Labor Management Reporting and Disclosure Act ("LMRDA"), and this Court's decision in *Hodgson v. Chain Service Restaurant, Luncheonette & Soda Fountain Employees Union, Local 11 ("Chain Service"),* 355 F.Supp. 180 (S.D.N.Y.1973). *See* Leedham Br. at 10. Under § 504(a) of the LMRDA, a person who has been *convicted* of one or more specified crimes is prohibited from serving as an officer or executive board member of a labor organization for thirteen years following his or her conviction. 29 U.S.C. § 504(a). In *Chain Service,* this Court concluded that, in a supervised election, the Secretary of Labor has the duty to refuse to certify a candidate rendered ineligible to serve as a union officer by virtue of a *conviction* qualifying under § 504(a). *Chain Service,* 355 F.Supp. at 188–89.

Thus, a candidate is ineligible under the LMRDA only if he or she has been convicted of a crime, not if he or she has been charged or indicted, or if allegations against him or her are still under investigation. Likewise, while union discipline may affect an individual's membership rights, including his or her eligibility to hold office under the LMRDA, that the

union has filed charges against an individual or that an individual's conduct is under investigation does not affect that person's rights as a member. Consequently, a candidate that has only been charged with disciplinary violations that have not yet been adjudicated and resolved is not considered ineligible under the LMRDA.

Here, none of the members of the Hoffa Slate have been convicted of an enumerated crime under the LMRDA, nor have any of the allegations and charges pending against members of the Hoffa Slate been adjudicated and resolved. Therefore, this Court will not disturb the Election Officer's and the Election Appeals Master's conclusion that certification need not be delayed pending the outcome of the IRB proceedings regarding charges against members of the Hoffa Slate and the resolution of allegations of misconduct.

## C. The Southern Region Vice President Vacancy

■ As previously noted, the Election Officer determined that Potter, a successful candidate for Southern Region Vice President on the Hoffa Slate, should be disqualified. The Election Officer found that Potter violated the Election Rules for the Rerun Election by knowingly exceeding the $5,000 contribution limit for candidates when he gave $10,000 of his own funds to the Hoffa campaign. Moreover, the Election Officer ascertained that Potter then attempted to conceal that violation by submitting documents that falsely attributed $5,000 to other donors and by intentionally making false statements in testimony to the Election Officer and the IRB during their investigations. EO Decision at 48, 51. The Hoffa Slate does not challenge the Election Officer's decision to disqualify Potter, and the Election Appeals Master's subsequent affirmance of that decision.

After deciding that Potter's misconduct warranted disqualification, the Election Officer concluded that he need not order a rerun of the Southern Region Vice Presi-

dent race in order to fill the vacancy created by Potter's disqualification. Desiring to avoid the expense and disruption of a rerun election, see id., at 52, 54, the Election Officer decided to certify one Southern Region Vice President position as vacant, thereby allowing the newly-elected GEB to fill the vacancy by appointment. EO Decision at 53. The Election Officer surmised that there was a prevalence of Slate voting that showed that the intent of the rank-and-file was to elect a slate of affiliated candidates. Id. Therefore, despite the slim margin of victory the Hoffa Slate achieved in the Southern Region, the Election Officer determined that the rank-and-file's intent could be served by allowing the slate elected to fill the seat with another affiliate, thus avoiding the need for a rerun election. Id.

On appeal, the Election Appeals Master determined that the rationale the Election Officer asserted was not sufficient to support a decision to evade a rerun election. Given the slim margin of victory in the regional race, the Election Appeals Master concluded that it would be unjust to conclude that Potter's wrongful conduct did not affect the outcome of the regional election. EAM Decision at 18–19. The Election Appeals Master noted that while a rerun election would involve some expense and disruption, "the benefits of maintaining the integrity of the process by conducting a narrow election rerun, at least in this case ... outweigh the burdens associated with having to conduct a rerun election." Id. at 19. Furthermore, the Election Appeals Master did not accept the Election Officer's assumption that allowing the Hoffa Slate to fill the vacancy by appointment would be consistent with voter intent. The Election Appeals Master noted that determining the primary motivation of voters "is an extremely difficult exercise—and one that should not be used to deny IBT members within the Southern Region an opportunity to elect the Souther Region Vice President." Id.

Finally, the Election Appeals Master found that under these circumstances, it would be inconsistent with the remedy of disqualification to allow the same slate that may have benefitted from Potter's conduct to appoint an individual to fill the seat left open because of his wrongdoing. *Id.* at 20. Therefore, the Election Appeals Master ordered the Election Officer to conduct a rerun election in the Southern Region to fill the vacancy.

The Hoffa Slate argues that the Election Officer's decision to allow the position to be filled by appointment was within the Election Officer's broad discretion and should not have been disturbed.[2] Hoffa Br. at 5. However, while the Election Officer has broad discretion to remedy violations of the Election Rules or other misconduct that jeopardize the integrity of the election, the Election Officer's remedies cannot be inconsistent with the Election Rules absent a proper basis. *See Carey Slate Protest*, 9 F.Supp.2d 354, 362–63 (S.D.N.Y.1998) (reversing the fine imposed by the Election Officer because it was "inexplicably contrary to the Election Rules' mandate that prohibited contributions be returned"), *aff'd*, 1999 WL 89104, *4 (2d Cir. Feb.23, 1999) (stating that the "Election Officer in this instance had no basis to depart from the clear direction of the Election Rules that the candidates not keep prohibited contributions.").

Article XIV, § 5 of the Rerun Election Rules provides that "[s]hould the Election Officer refuse to certify any election, [he] shall then immediately order that a rerun election be held, including, if necessary, the rerunning of the nomination process." Rerun Election Rules, Art. XIV, § 5. By disqualifying Potter, the Election Officer necessarily refused to certify the results of the election for Potter's Southern Region Vice President position. The Election Officer did not provide, nor would there appear to be, an appropriate basis for departing from the Election Rules that require a rerun election. Thus, the Election Officer's decision to permit the GEB to fill the position by appointment was an abuse of his discretion, and therefore, this Court finds that the Election Appeals Master was correct in ordering the Election Officer to hold a rerun election to fill the vacancy.

### D. *Conclusion*

For the forgoing reasons, the decision of the Election Appeals Master is Affirmed in all respects. This Court lifts the voluntary stay of the Election Appeals Master's decision. Thus, the certification of the IBT Rerun Election results is effective immediately. In addition, the Election Officer is hereby ordered to promptly formulate a plan to complete the rerun election for the vacant Southern Region Vice President seat, and submit it to this Court for approval on or before April 1, 1999.

SO ORDERED.

---

2. According to Douglas Mims ("Mims"), a member of Teamsters Local 728 and a candidate for Southern Region Vice President, "the Hoffa Slate consciously and deliberately waived its right to appeal, and so its arguments should not be considered on the merits." Memorandum of Douglas Mims in Response to the Hoffa Slate's Appeal, at 1. This Court declines to determine whether the Hoffa Slate waived its right to appeal because this Court finds it necessary to address the issue the Hoffa Slate raises despite the appearance that this appeal was brought in bad faith after making representations to the Election Appeals Master and other parties that the Hoffa Slate would not appeal the Election Appeals Master's decision to order a rerun election.